UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**Forman Holt**
2 University Plaza, Suite 308
Hackensack, NJ 07601
Telephone: (201) 857-7110
Charles M. Forman, Esq. (CMF-8937)
cforman@formanlaw.com
Michael E. Holt, Esq. (MEH-8735)
mholt@formanlaw.com
*Counsel for Debtor*

**K&L Gates LLP**
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Daniel M. Eliades, Esq. (DME-6203)
daniel.eliades@klgates.com
Peter J. D'Auria, Esq. (PJD-3709)
peter.dauria@klgates.com
William L. Waldman (WLW-1452)
william.waldman@klgates.com
*Special Counsel for Debtor*

| | |
|---|---|
| In re:<br><br>Skyline Tower Resort Vacation Condominium Association, Inc.,<br>Debtor. | Case No. 25-22156 (ABA)<br><br>Chapter 11 (Subchapter V)<br><br>Judge Hon. Andrew B. Altenburg, Jr. |
| Skyline Tower Resort Vacation Condominium Association, Inc.,<br>Plaintiff,<br>v.<br>First American Trust, FSB, a Federal Savings Bank, as Trustee, Duly Appointed Under the Declaration of Trust for the Club Wyndham Access Vacation Ownership Plan., *et al.*[1]<br>Defendants. | Adv. Proc. No.: 26-01175-ABA |

# AMENDED COMPLAINT TO AUTHORIZE SALE OF DEBTOR AND NON-DEBTOR CO-OWNERS' INTERESTS IN REAL PROPERTY PURSUANT TO 11 U.S.C. § 363(h)

[1] A full list of all named Defendants is attached as Exhibit A and Exhibit C to the Amended Complaint as filed with the Court. Simultaneous with the filing of the Complaint the Debtor filed a motion seeking authorization to shorten the caption above.

Plaintiff, Skyline Tower Resort Vacation Condominium Association, Inc. (the "Plaintiff", "Association" or "Debtor"), files this *Amended Complaint to Authorize Sale of Debtor and Non-Debtor Co-Owners' Interests in Real Property Pursuant to 11 U.S.C. § 363(h)* (the "Amended Complaint") seeking relief pursuant to 11 U.S.C. § 363(h) against the defendants listed on **Exhibit A** and **Exhibit C**[2] to this Amended Complaint and incorporated herein by reference (collectively, the "Defendants" or "Owners"). In support of the Amended Complaint, Plaintiff states and alleges as follows:

## PRELIMINARY STATEMENT

On April 9, 2026, Debtor filed its *Complaint to Authorize Sale of Debtor and Non-Debtor Co-Owners' Interests in Real Property Pursuant to 11 U.S.C. § 363(h)* (the "Original Complaint"). The Debtor filed the Original Complaint seeking authority to sell the Property, which is described and defined below, including the interests of the Debtor and the Defendants in the Property. This Amended Complaint seeks the same relief as the Original Complaint, does not alter the substantive allegations contained in the Original Complaint, and only adds additional parties to this proceeding that are identified by the Debtor as being necessary to this action as listed in Exhibit C[3] to this Amended Complaint. The Debtor is not seeking a monetary judgment against any of the Defendants in this Amended Complaint. Rather, the Debtor anticipates that each Defendant, subject to any setoff for amounts due to the Association and confirmation of their ownership interest, will receive money from the sale of the Property.

[2] Service of this Amended Complaint on each Defendant will utilize a form of Exhibit A and Exhibit C consisting of one page that identifies the specific Defendants(s) being served and their corresponding (redacted) contract number(s).
[3] For ease of reference, the Defendants identified in Exhibit C are numbered beginning at 9,000.

## THE PARTIES

1. The Association is a not-for-profit corporation organized under the laws of the State of New Jersey pursuant to a Certificate of Incorporation filed with the State Treasurer of New Jersey on October 19, 2004.

2. The Association was formed pursuant to a *Master Deed and Timeshare Plan for Fairfield Atlantic City-Skyline Tower, A Condominium* dated October 18, 2004 and recorded on January 20, 2005 as Instrument No. 2005007307 in the Atlantic County Clerk's Office, as amended by: (i) the First Amendment to *Master Deed and Timeshare Plan for Fairfield Atlantic City – Skyline Tower, a Condominium*, recorded on July 5, 2006 in the Atlantic County Clerk's Office as Instrument #2006066440; (ii) the Second Amendment to Master Deed and Timeshare Plan for Fairfield Atlantic City – Skyline Tower, a Condominium, recorded on July 5, 2006 in the Atlantic County Clerk's Office as Instrument #2006066441; (iii) the Third Amendment to Master Deed and Timeshare Plan for Fairfield Atlantic City – Skyline Tower, a Condominium, recorded on July 5, 2006 in the Atlantic County Clerk's Office as Instrument #2006066442; and (iv) the Fourth Amendment to Master Deed and Timeshare Plan for Fairfield Atlantic City – Skyline Tower, a Condominium, recorded on March 23, 2011 in the Atlantic County Clerk's Office as Instrument #2011019157 (collectively, the "Master Deed").

3. The Master Deed established the Association and submitted the property identified in the Master Deed, located at Block 58 Lots 1 and 2 in Atlantic City, New Jersey, (the "Property") to condominium form of ownership. The Master Deed identifies units, common elements, limited common elements, and relative ownership of same. Units are defined as portions of the condominium designated for separate and distinct ownership. The Master Deed defines common

elements as those items defined in the Condominium Act as common elements,[4] including common element furnishings, and limited common elements. Limited common elements are portions of the common elements which are exclusively reserved for use for one or more, but not all, units. Each unit owner has a fractional undivided interest in the common elements.

4. The By-Laws of the Association reflect that the Association was organized and exists to administer the Fairfield Atlantic City - Skyline Tower, a Condominium. The original By-Laws were recorded in conjunction with the recordation of the Master Deed on January 20, 2025, in the Office of the Recorder of Deeds for Atlantic County, New Jersey as part of as Instrument No. 2005007307. The By-Laws, as subsequently amended, are collectively referred to as the "By-Laws".

5. On or about November 15, 2025 (the "Petition Date"), the Association filed a voluntary petition for relief pursuant to title 11 of the United States Code5 (the "Bankruptcy Code"). Since the Petition Date, Debtor has remained in possession of its assets and has continued management of its property, business, and affairs.

6. As of the Petition Date, the Defendants and Debtor co-own tenant-in-common fee simple interests in the Property.

7. The Defendants listed in Exhibit A are tenant-in-common owners of fee simple interests at the Property as identified on the Debtor's books and records as of March 19, 2026.

---

[4] Common elements are defined as: "(i) the land described in the master deed; (ii) as to any improvement, the foundations, structural and bearing parts, supports, main walls, roofs, basements, halls, corridors, lobbies, stairways, elevators, entrances, exits and other means of access, excluding any specifically reserved or limited to a particular unit or group of units; (iii) yards, gardens, walkways, parking areas and driveways, excluding any specifically reserved or limited to a particular unit or group of units; (iv) portions of the land or any improvement or appurtenance reserved exclusively for the management, operation or maintenance of the common elements or of the condominium property; (v) installations of all central services and utilities; (vi) all apparatus and installations existing or intended for common use; (vii) all other elements of any improvement necessary or convenient to the existence, management, operation, maintenance and safety of the condominium property or normally in common use; and (viii) such other elements and facilities as are designated in the master deed as common elements." N.J.S.A. 46:8b-3.

[5] All references to the "Bankruptcy Code" herein refer to 11 U.S.C. §§101-1532.

8. The Defendants listed in Exhibit C are tenant-in-common owners of fee simple interests at the Property identified by a full title examination of the Property in the Atlantic County Records (the "Title Examination").

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

10. This is a core proceeding pursuant to 28 U.S.C. § 157(a), (b)(2)(A), (N) and (O).

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

12. The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code, including section 363(h), and rules 7001 et. seq. of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including rule 7001(c).

## COMMON ALLEGATIONS

### A. The Property

13. The Property is located at 100 S. North Carolina Avenue, Atlantic City, New Jersey. Built in 1982, the Property consists of a 32-story, concrete-constructed high rise above a parking deck.

14. The Property contains 20 commercial units (collectively, the "Commercial Units") and 296 residential units (collectively, the "Residential Units").

15. As authorized by more than the required number of Owners prior to the Petition Date, (i) occupancy at the Property by Owners, guests and others was suspended as of December 27, 2025, and (ii) collection of 2026 maintenance fees from Owners was suspended. The Debtor, via its contract with a management company, continues to maintain the Property as debtor-in-possession pursuant to Sections 1181 and 1184 of the Bankruptcy Code so that the Property can be sold for its highest and best value.

**B. The Ownership Structure of the Property**

16. Floors one through six of the Property contain the Commercial Units. According to the records of the Association, Wyndham Vacation Resorts, Inc. ("WVR") owns all Commercial Units.

17. Commercial Unit 1 represents laundry space; Commercial Unit 2 is the front desk; Commercial Unit 3 is office space; Commercial Unit 4 and Commercial Unit 5 are non-descript Commercial Units; Commercial Unit 6 is the property management office; Commercial Units 7, 10, 12, 14 and 15 are components of the parking garage; Commercial Units 8, 9, 11, and 13 are designated as back of house; Commercial Unit 16 contains activities and the arcade; Commercial Unit 17 is a deck; Commercial Unit 18 is the indoor pool; Commercial Unit 19 is a recreation and fitness area; and Commercial Unit 20 is a sales unit.

18. The Residential Units located on floors seven through twelve and fourteen through thirty-three are organized pursuant to the Master Deed as a timeshare plan. Sections 4.2 and 4.5.1 of the Master Deed provide that the developer has sole discretion to allocate Residential Units into the timeshare plan and to create timeshare interests in the Residential Units.

19. Pursuant to Section 2.43 of the Master Deed, Vacation Ownership Interests ("VOI's") are defined as undivided interests as tenants in common with other owners in a Residential Unit or grouping of Residential Units. The initial developer, Fairfield Resorts, Inc., organized the VOIs in the Property by floor, with each VOI owner receiving a fractional interest on one of the Property's residential floors.

20. Pursuant to Section 1 of Article II of the Association Bylaws, record owners of VOIs and Commercial Units are members of the Association.

21. Exhibit F to the Master Deed sets forth the percentage of common elements allocated to each of the units in the condominium – both commercial and residential. Pursuant to Section 5.4 of the Master Deed, each owner of a VOI has a fractional undivided interest in one or more Residential Units and will also have a fractional ownership interest in the sum of the percentage interests in the common elements for all such Residential Units.

22. The Association owns the fee simple interests identified on **Exhibit B** to this Amended Complaint, and a concomitant share of the common elements at the Property, which comprise 5,864,500 of the 2,640,478,000 tenant-in-common fee simple VOIs at the Property (the "Association Interest"). The Association Interest comprises approximately .23% of the total VOIs at the Property.

23. The Association owns an undivided interest as tenant in common in the Property with all other VOI and Commercial Unit Owners.

24. According to the records of the Association, as of March 19, 2026, WVR also owns 322,789,500 of the 2,640,478,000 tenant-in-common fee simple VOIs at the Property, and a concomitant share of the common elements at the Property. WVR owns approximately 12.22% of the total VOIs at the Property. WVR is a tenant in common with all other VOI and Commercial Unit Owners at the Property.

25. According to the records of the Association, as of March 19, 2026, First American Trust, FSB, as Trustee, Duly Appointed Under the Declaration of Trust for the Club Wyndham Access Vacation Ownership Plan ("First American Trust, as Trustee") owns 1,790,597,000 of the 2,640,478,000 tenant-in-common fee simple VOIs at the Property, and a concomitant share of the common elements at the Property. First American Trust, as Trustee owns approximately 67.81%

of the total VOIs at the Property. First American Trust, as Trustee is a tenant in common with all other VOI and Commercial Unit Owners at the Property.

26. According to the records of the Association, as of March 19, 2026, the remaining 521,227,000 of the 2,640,478,000 tenant-in-common fee simple VOIs at the Property, and a concomitant share of the common elements at the Property, are owned by approximately 8,190 parties to approximately 4,773 contracts (the "Interval Owners"). The Interval Owners own approximately 19.74% of the total VOIs at the Property. The Interval Owners are tenants in common with all other VOI and Commercial Unit Owners at the Property.

27. The Debtor owns at least one VOI on each residential floor of the Property, as well as an undivided interest in all the common elements at the Property.

28. The Interval Owners do not occupy the Residential Units at the Property.

29. Accordingly, no Defendant will be displaced from their home by the proposed sale of the Property.

30. Upon the filing of the Petition, the Association Interest owned by the Debtor became property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a), and the Debtor is otherwise a tenant in common with the Defendants.

31. Exhibit A to this Amended Complaint sets forth the name and (redacted) contract number of the Defendants, per the Debtor's books and records as of March 19, 2026, except that and certain Commercial Units or VOI's owned by the Debtor, WVR and/or First American Trust, as Trustee, may not have corresponding contract numbers.

32. Exhibit C to this Amended Complaint sets forth the name and (redacted) contract number of the Defendants as identified by the Title Examination.

### C. The Potential Sale of the Property

33. Sale of the Property free and clear of the interests of the Debtor and Defendants, provides the ability to attain the highest and best offer for the Association and Owners.

34. On January 14, 2026, the Debtor filed its *Motion for Entry of an Order (I) (A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related Relief* (Doc. No. 90) (the "Bid Procedures Motion") seeking to establish procedures to market and sell the Property, including the Association Interest in the Property, together with the interests of First American Trust, as Trustee, WVR and all other Owners.

35. On February 10, 2026, the Bankruptcy Court entered the *Order (I)(A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of notice Thereof, and (II)(A) Setting Hearing to Approve Sale of Assets and (B) Granting Related Relief* (Doc. No. 134) (the "Bid Procedures Order"). The Bid Procedures Order accounts for and resolves the Defendants' rights under 11 U.S.C. § 363(i).

36. Pursuant to the Bid Procedures Order, the Debtor is marketing the Property for sale. As of this date, the Debtor has not presented a proposed sale to the Bankruptcy Court for approval.

37. On February 13, 2026, the Debtor filed its *Plan of Liquidation* (Doc. No. 141) (the "Plan"). Confirmation of the Plan is pending Court approval.

38. Any sale of the Property, and any proposed distribution of proceeds of any sale, shall be subject to separate request(s) of the Debtor to the Court and subject to separate judgment(s) or order(s) of the Court.

39. The Debtor intends to separately seek orders or judgments from the Court (i) determining the extent of the ownership interest of each Defendant, and the amount due by each Defendant for outstanding maintenance fees or assessments to the Debtor, if any, and (ii) authorizing the distribution of the proceeds of any sale approved by the Court, less the costs and expenses of such sale as may be approved by the Court.

**D. Proposed Consent Judgments**

40. At a special meeting of the members of the Association conducted on October 4, 2025, with a quorum of the voting interests represented in person or by proxy, more than 99% of the members of the Association in attendance voted to authorize the Board of Directors to file a chapter 11 bankruptcy petition for the Association to, among other things and subject to Court approval, market and sell the entire Property, free and clear of the interests of all Owners (as well as the Association), with such interests to attach to the proceeds of sale, subject to distribution pursuant to Court order.

41. Debtor believes that many Defendants will consent to the relief sought in this Amended Complaint.

42. Together with the Amended Complaint, Debtor is providing each Defendant with a *Stipulation and Consent Judgment* (a "Consent Judgment") offering to resolve the Amended Complaint and this adversary proceeding as to each such Defendant.

**COUNT 1 – SALE OF REAL PROPERTY PURSUANT TO 11 U.S.C. §363(h)**
**(Against the Defendants as listed in Exhibit A and Exhibit C)**

43. The Debtor repeats and realleges the allegations set forth in all preceding paragraphs of this Amended Complaint, as if set forth at length herein.

44. The Debtor requests the Court enter judgment against each Defendant identified in Exhibit A and Exhibit C authorizing Debtor to sell the Debtor's interest in the Property together with the Defendants' interests in the Property, pursuant to 11 U.S.C. § 363(h).

45. As of the Petition Date, the Debtor and the Defendants co-owned the Property as tenants-in-common.

46. As of the Petition Date, the Debtor had an undivided interest in the Property as a tenant-in-common.

47. Partition in kind of the Property among Debtor and the Defendants is impracticable because of the number of the Owners of the Property and the timeshare structure of the Property.

48. Sale of the Debtor's undivided interest in the Property would realize significantly less for the Debtor's bankruptcy estate than sale of the Property free of the interests of the Defendants.

49. The benefit to the Debtor's bankruptcy estate of selling the Property free of the interests of the Defendants in the Property outweighs the detriment, if any, to the Defendants – none of whom are full-time occupants of the Property.

50. Defendants' interests in the Property will attach to the sale proceeds and shall only be disbursed subject to further judgments or orders of the Court.

51. The Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

52. All requirements for a sale of the Property pursuant to 11 U.S.C. § 363(h) are satisfied.

**WHEREFORE**, the Debtor respectfully requests that the Court enter a judgment in favor of Debtor against each Defendant:

(a) authorizing Debtor to sell the Debtor's interest in the Property together with the Defendants' interests in the Property, pursuant to section 363(h) of the Bankruptcy Code and rule 7001(c) of the Bankruptcy Rules, provided that any sale of the Property shall be subject to further order of the Bankruptcy Court pursuant to the Bid Procedures Order or otherwise;

(b) pursuant to section 363(j) of the Bankruptcy Code, directing that after a sale of the Property pursuant to section 363(h) of the Bankruptcy Code, the Debtor shall distribute to the Defendants, according to the Defendants' interests in the Property as determined by further order of the Bankruptcy Court, the proceeds of such sale less the costs and expenses of such sale. The costs and expenses of a sale of the Property shall include, but not be limited to, those reasonable costs and expenses (including professional fees and commissions) incurred by the Debtor in connection with the Bid Procedures Motion and Bid Procedures Order, the marketing and sale of the Property, closing a sale of the Property, this Complaint and adversary proceeding, the determination of Defendants' interests in the Property, and any distribution of sale proceeds. The amount of such costs and expenses (including professional fees and commissions) to be deducted from the proceeds of the sale of the Property shall be determined by further order of the Bankruptcy Court; and

(c) granting the Debtor such other relief that this Bankruptcy Court deems just and equitable.

Dated: September 2, 2026

Respectfully submitted,

K&L Gates LLP
One Newark Center
1085 Raymond Blvd. - 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq. (DME-6203)
Peter J. D'Auria, Esq. (PJD-3709)
William L. Waldman, Esq. (WLW-1452)
Special Counsel for Debtor

By: /s/ *Daniel M. Eliades*
Daniel M. Eliades