**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re:<br><br>Skyline Tower Resort Vacation Condominium Association, Inc.,<br><br>Debtor. | Case No.:<br>Adv. No. | 25-22156-ABA<br>26-01175-ABA |
| Skyline Tower Resort Vacation Condominium Association, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>First American Trust, FSB, a Federal Savings Bank, as Trustee, Duly Appointed Under the Declaration of Trust for the Club Wyndham Access Vacation Ownership Plan, et al.<br><br>Defendants. | Chapter:<br><br>Hearing:<br><br>Judge: | 11 (Subchapter V)<br><br>November 17, 2026<br><br>Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before this court is the Motion for Summary Judgment (the "Motion") filed by the Debtor/Plaintiff, Skyline Tower Resort Vacation Condominium Association, Inc. (hereinafter either "Plaintiff" or the "Association"). Doc. No. 48. Defendant, Towanda James, and Defendants, Laura Byerson and her husband, Terrence Byerson (the "Byersons"), and Mrs. Addie Wardlaw (collectively the "Objecting Defendants") opposed the Motion. Doc. Nos. 52 and 53. For all the following reasons, the Motion is granted.

## JURISDICTION AND VENUE

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O) and the court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334, 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. The record is now closed, and pursuant to Federal Rule of Bankruptcy Procedure 7052, the court issues the following findings of fact and conclusions of law.

## I. UNDISPUTED BACKGROUND AND PROCEDURAL HISTORY

The following is undisputed. The Association filed for chapter 11 bankruptcy under Subchapter V on November 15, 2025. Case No. 25-22156-ABA ("Main Case") at Doc. No. 1. Since the petition date, Association has remained in possession of its assets and has continued management of its property, business, and affairs.

The Association is a not-for-profit corporation organized under the laws of the State of New Jersey pursuant to a Certificate of Incorporation filed with the State Treasurer of New Jersey on October 19, 2004. Doc. No. 48-3 at ¶3. The Association was formed pursuant to a Master Deed and Timeshare Plan for Fairfield Atlantic City-Skyline Tower, A Condominium dated October 18, 2004 and recorded on January 20, 2005 as Instrument No. 2005007307 in the Atlantic County Clerk's Office, and subsequently amended four times (collectively, the "Master Deed"). Doc. No. 48-3 at ¶4.

The property identified in the Master Deed is located at 100 S. North Carolina Avenue, Atlantic City, New Jersey (the "Property"). Doc. No. 48-3 at ¶7. The Property, which was built in 1982, consists of a 32-story, concrete-constructed high rise above a parking deck. The Property contains 20 commercial units (collectively, the "Commercial Units") and 296 residential units (collectively, the "Residential Units"). Doc. No. 48-3 at ¶9. Prior to the petition date, owners suspended occupancy of the Property as of December 27, 2025 and ceased collection of the maintenance fees. Floors one through six of the Property contain the Commercial Units, which are owned solely by Wyndham Vacation Resorts, Inc. ("WVR"). Doc. No. 48-3 at ¶9. The Residential Units located on floors seven through twelve and fourteen through thirty-three are organized pursuant to the Master Deed as a timeshare plan. Doc. No. 48-3 at ¶10.

Sections 4.2 and 4.5.1 of the Master Deed provide that the developer has sole discretion to allocate Residential Units into the timeshare plan and to create timeshare interests in the Residential Units. Doc. No. 48-3 at ¶10. Pursuant to Section 2.43 of the Master Deed, Vacation Ownership Interests ("VOIs") are defined as undivided interests as tenants in common with other owners in a Residential Unit or grouping of Residential Units. Doc. No. 48-3 at ¶11, The initial developer, Fairfield Resorts, Inc., organized the VOIs in the Property by floor, with each VOI owner receiving a fractional interest on one of the Property's residential floors. *Id*. Record owners of VOIs and Commercial Units are members of the Association. Pursuant to Section 5.4 of the Master Deed, each owner of a VOI has a fractional undivided interest in one or more Residential Units and will also have a fractional ownership interest in the sum of the percentage interests in the common elements for all such Residential Units. Doc. No. 48-3 at ¶12.

The Association owns tenant-in-common fee simple interests at the Property, and a concomitant share of the common elements at the Property, which comprise 9,369,000 of the 2,640,478,000 tenant-in-common fee simple VOIs at the Property (the "Association Interest"). The Association is a tenant in common with all other VOI and Commercial Unit owners at the Property. Doc. No. 48-3 at ¶14.

WVR owns 268,407,000 of the 2,640,478,000 tenant-in-common fee simple VOIs at the Property, and a concomitant share of the common elements at the Property. WVR is a tenant in common with all other VOI Owners at the Property. Doc. No. 48-3 at ¶15.

First American Trust, FSB, as Trustee, Duly Appointed Under the Declaration of Trust for the Club Wyndham Access Vacation Ownership Plan ("First American Trust, as Trustee") owns 1,790,597,000 of the 2,640,478,000 tenant-in-common fee simple VOIs at the Property, and a concomitant share of the common elements at the Property. First American Trust, as Trustee is a tenant in common with all other VOI and Commercial Unit Owners at the Property. Doc. No. 48-3 at ¶16.

The remaining 572,105,000 of the 2,640,478,000 tenant-in-common fee simple VOIs at the Property, and a concomitant share of the common elements at the Property, are owned by approximately 8,190 parties to approximately 4,773 contracts (the "Interval Owners" or "Defendants"). The VOI Owners are tenants in common with all other VOI and Commercial Unit Owners at the Property. Doc. No. 48-3 at ¶17.

At a special meeting of the members of the Association conducted on October 4, 2025, with a quorum of the voting interests represented in person or by proxy, more than 99% of the members of the Association in attendance voted to authorize the Board of Directors to file a chapter 11 bankruptcy petition for the Association to, among other things and subject to court approval, market and sell the entire Property, free and clear of the interests of all owners (as well as the Association), with such interests to attach to the proceeds of sale, subject to distribution pursuant to court order. Doc. No. 48-3 at ¶22. Upon the filing of the Petition, the Association Interest became property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a), and the Association is otherwise a tenant in common with the VOI owners. The Property does not have any valid liens, mortgages, or encumbrances against it. Doc. No. 48-4 at ¶45.

On January 14, 2026, the Association filed its Motion for Entry of an Order (I) (A) Approving Auction and Bidding Procedures, (B) Scheduling Bid Deadlines and an Auction, and (C) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of Assets and (B) Granting Related Relief (the "Bid Procedures Motion"). Main Case Doc. No. 90. On February 10, 2026, the court entered an order approving the Bid Procedures Motion (the "Bid Procedures Order"). Main Case Doc. No. 134.

On February 13, 2026, the Association filed its Plan of Liquidation (the "Plan"). Main Case Doc. No. 141. Pursuant to the Plan, the Association's secured creditors will receive payment first. The VOI owners will receive a proportional share of the funds remaining after sale, expenses, creditor claims, and wind-down reserves. The payment to co-tenants consists of their *pro rata* share of the remaining sale proceeds and cash reserves, reduced by unpaid fees owed individually to the Association. The Association's own vacation interests are excluded from the distribution calculations. Main Case Doc. No. 141 at §§ 1.01, 5.01.

On April 4, 2026, the Association filed an adversary complaint (the "Complaint") seeking to sell the Property pursuant to 11 U.S.C. § 363(h). Doc. No. 1. The Plaintiff asks this court to

enter judgment against over 8000 VOI owners (the "Defendants") in order to sell Plaintiff's interest in the Property together with the Defendants' interests in the Property, pursuant to 11 U.S.C. § 363(h). Doc. No. 1 at ¶ 42. The Plaintiff alleges that partition in kind of the Property among the Plaintiff and the Defendants is impracticable because of the number of the VOI owners of the Property and the timeshare structure of the Property. *Id.* at ¶ 45. The Plaintiff asserts that the sale of the Plaintiff's undivided interest in the Property would realize significantly less for the Plaintiff's bankruptcy estate than sale of the Property free of the interests of the Defendants. *Id.* at ¶ 46. Further, the Plaintiff argues the benefit to the bankruptcy estate of selling the Property free of the interests of the Defendants outweighs the detriment, if any, to the Defendants, none of whom are full-time occupants of the Property. *Id.* at ¶ 47. The Defendants' interests in the Property will attach to the sale proceeds and shall only be disbursed subject to further judgments or orders of the court. *Id.* at ¶48.

On April 28, 2026, an auction was held and the bid of Skyline Tower Acquisitions LLC ("STA") in the amount of $18,200,000.00 was the winning bid. Main Case Doc. No. 212 at ¶¶ 3-4. The Plaintiff accepted the bid of Capital Insight LLC in the amount of $18,100,000.00 as a backup bid. Main Case Doc. No. 212 at ¶ 5. The Plaintiff and STA executed a Purchase and Sale Agreement. Doc. No. 48-3 at ¶ 30. The sale of the Property will not close until the conclusion of this adversary proceeding. Main Case Doc. No. 283 at 16, ¶ 2. On July 7, 2026, the Plaintiff filed a Sale Approval Request (Main Case Doc. No. 241), and the court entered a Sale Order on August 29, 2026. Main Case Doc. No. 283.

On June 6, 2026, the Byersons, proceeding *pro se*, filed an Answer to the Complaint. Doc. No. 18. On August 25, 2026, Plaintiff filed its Motion to Add and Drop Parties, for Leave to File an Amended Complaint, Modify Service Procedures, and Limiting Notice (the "Joinder Motion"). Doc. No. 27. Plaintiff sought to join 809 additional Defendants identified through a post-filing title examination of the Property; (ii) dismissing 521 Defendants who no longer held an interest in the Property; and (iii) granting Plaintiff leave to file the Amended Complaint reflecting those corrections. Doc. No. 48-3 at 20, ¶43. The Joinder Motion was granted on September 2, 2026. Doc. No. 31. The Amended Complaint was filed on September 2, 2026. Doc. No. 33. The total number of defendants named in this adversary proceeding is 8,990. Doc. No. 48-3 at 24, ¶53.[1]

On October 15, 2026, the Plaintiff filed the Motion, Memorandum of Law in Support, a Statement of Undisputed Facts, the Transcript of the Hearing Held on April 13, 2026, the Declaration of Sheema Holmes-Walker, President of the Board of Directors of the Association, the Declaration of Jordan Schack, Director at Hilco Real Estate, and the Declaration of Brittney Whitaker. Doc. No. 48. The Byersons filed an Opposition to the Motion. Doc. No. 52. Defendant, Towanda James, also proceeding *pro se*, filed an Opposition to the Motion. Doc. No. 53.

---

[1] Consent judgments have been entered against WVR and First American Trust, as Trustee. Doc. Nos. 25 and 26. Pursuant to the Plaintiff's Motion re: for Approval and Entry of Stipulations and Consent Judgments Authorizing Sale of Ownership Interests Pursuant to 11 U.S.C. § 363(h) (Doc. No. 49), the court entered consent judgments against 1,633 defendants. Doc. Nos. 54 and 55.

The court held a hearing on November 17, 2026. The court heard oral arguments from the Association, Mrs. Laura Byerson, and Mrs. Addie Wardlaw.[2] The pleadings and record are closed and this matter is now ripe for disposition.

## II. THE STANDARD

A court may grant summary judgment under Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must construe facts and inferences in the light most favorable to the non-moving party. *See e.g. Lemaire v. Hartford Life & Acc. Ins. Co.,* 69 F. App'x 88, 91 (3d Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To succeed on summary judgment, the movant must show it is entitled to judgment as a matter of law by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Bowman v. City of Olmsted Falls*, 756 F. App'x 526, 529 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). Once the movant carries its burden, if the non-moving party fails to properly address the movant's factual assertion, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The nonmoving party must present actual evidence, not mere allegations. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). The court must then only determine whether there is a genuine issue for trial, not weigh the evidence or determine the truth of the matter. *Id.* at 249. Material facts are those that might affect the action's outcome under the law; fact issues must be genuine, not merely some alleged factual dispute. *Born v. Monmouth Cnty. Corr. Inst.*, No. 07-3771, 2009 WL 2058837, at *3 (D.N.J. July 9, 2009); *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis added).

## III. Discussion

### A. Sale Free and Clear Pursuant to 11 U.S.C. § 363(h)

The Bankruptcy Code allows a debtor-in-possession to sell both the estate's interest in property as well as any co-owners' interest in that property when the debtor has an undivided interest as tenant in common, joint tenant, or tenant by the entirety, if certain conditions are satisfied. 11 U.S.C. § 363(h). "The key requirement is that the debtor have 'an undivided interest as a tenant in common, joint tenant, or tenant by the entirety' as of the petition date." *In re Olsen*, No. 15-01877, 2017 Bankr. LEXIS 2034, at *21 (Bankr. D.N.J. July 20, 2017) (quoting *In re Stewart*, 368 B.R. 445, 449 (Bankr. E.D. Pa. 2007)). The Plaintiff must also satisfy the following conditions:

---

[2] Mrs. Addie Wardlaw did not file an opposition to the Motion. However, because Mrs. Wardlaw is a *pro se* litigant the court allowed her to present her opposition verbally at the hearing.

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

**1. Is Partition Impracticable?**

The Plaintiff asserts it has satisfied all the requirements of section 363(h), there is not any genuine issue of material fact, and that the court should authorize the sale of the Property. The Byersons argue that there is a genuine dispute of material fact as to whether the benefit to the estate outweighs the detriment to them.

As an initial matter, the court finds that the Plaintiff, which owns 9,369,000 VOIs, holds its interest as a tenant in common with other VOI and Commercial Unit owners. Doc. No. 48-3 at ¶ 14; Doc. 48-7 at 5, §2.43.

Partition means the division of the land held by co-tenants into the co-tenants' respective fractional shares. *In re Dahlgren*, 418 B.R. 852, 859 (Bankr. D.N.J. 2009). If a fair division of the land cannot be obtained, then the entire estate may be sold and the proceeds appropriately divided. *Id.* Every co-tenant has the right to compel partition. *Id.* (citing RICHARD R. POWELL, POWELL ON REAL PROPERTY § 50.07 (Michael Allan Wolf ed., LexisNexis Matthew Bender 2008)). Under New Jersey law, if partition of the property is not practical, the co-owners can petition the court for a sale in lieu of partition. N.J.S.A. § 2A:56-2.

In addition to the Association, WVR, and First American Trust, as Trustee, there are 8,190 VOI owners who are tenants in common of the Property. Because each VOI owner owns a specific time period, rather than a separate parcel of real property, the Property cannot be physically separated amongst the owners. Thus, partition in kind is impracticable. The Objecting Defendants do not dispute that there are 8,193 co-tenants. Neither the Byersons, Ms. James, nor Mrs. Wardlaw argue that they are entitled to partition. Nor do they argue that partition is not impracticable. The Objecting Defendants have not produced any evidence to support a conclusion that partition may be achieved. The court concludes that based on the number of co-tenants and the nature of their ownership interests there is not any practicable way to partition the units and the common areas. *See In re Sand Castle S. Timeshare Owners Ass'n*, 618 B.R. 773, 779 (Bankr. D.S.C. 2020) (holding partition in kind of timeshare condominium units would be "virtually impossible"); *In re Hiawatha*

*Manor Ass'n*, No. 25-ap-90051, 2026 Bankr. LEXIS 1015, at *29 (Bankr. M.D. Tenn. Apr. 22, 2026) (holding "[i]t is fairly obvious" that physical partition among thousands of owners is impracticable).

### 2. Sale of the Property Free and Clear

Next, the Plaintiff argues that there is not any genuine issues of material fact to dispute that the sale of then the Plaintiff's undivided interest in the Property would realize significantly less for the estate than the sale of the Property free and clear of liens. The Plaintiff asserts that its ownership interest is a mere fraction of the total ownership and that the timeshare structure does not allow for a viable marketing of the Plaintiff's interest alone. Doc. No. 48-1 at 12, ¶ 29. The Plaintiff supports these assertions with Mr. Schack's testimony. Doc. No. 48-5. Mr. Schack certified that STA would not have submitted its bid, would not have entered the Purchase Sale Agreement, and will not consummate the proposed transaction if the Property is not sold free and clear of all claims, liens, and encumbrances including the interests of the Defendants. Doc. No. 48-5 at 5, ¶10. Mr. Schack further certified that STA would not pay $18.2 million for the Association's interest alone and in Mr. Schack's view there is not any purchaser who would pay a meaningful amount for only the Association's interest in the Property. Doc. No. 48-5 at 5, ¶12. The Objecting Defendants did not provide any evidence to rebut the testimony of Mr. Schack. Indeed, the Byersons admit that the sale free and clear would likely bring a higher gross price. Doc. No. 52-1 at 2.

Section 363(h)(2) requires the court to consider whether the "sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners." 11 U.S.C. § 363(h)(2). To satisfy section 363(h)(2), the Plaintiff must only demonstrate that selling its interest and the Defendants' interests together will realize more value from a sale than selling the Plaintiff's interest alone. *In re Hatfield*, No. NC-08-1204-HJuMk, 2009 Bankr. LEXIS 4578, at *21 (B.A.P. 9th Cir. Mar. 17, 2009). "It is generally accepted that the sale of a bankruptcy estate's undivided interest will generate substantially less than the sale of the property free of each owner's interest because of the chilling effect that the sale of the undivided interest usually has on prospective purchasers of the property…." *In re Phillips*, 379 B.R. 765, 796 (Bankr. N.D. Ill. 2007) (citations omitted).

Based upon the evidence provided by Mr. Schack the court concludes that the sale of the entire property is necessary to achieve the highest return to the estate and sale of the entire property will realize more than a sale of the Plaintiff's interest alone. The court concludes the $18.2 million sale price achieved at the auction will only be received if the Property is sold free and clear of all liens and interests as each chosen bidder has indicated that sale free clear of a liens and interests is a prerequisite for consummation of the transaction.

### 3. Benefit to the Estate Versus Detriment to Co-Owners

The Byersons and Mrs. Wardlaw argue that the Plaintiff has not shown that benefit to the estate from the sale of the Property free and clear of all liens and interests would outweigh the

detriment to them.[3] The Byersons do not seek to stop the sale of the Property as a whole but oppose judgment compelling the sale of their individual interest without an evidentiary hearing. The Byersons allege that their loss extends beyond mere displacement, describing more than twenty years of family vacations and reliance upon their interest for retirement travel. The Byersons assert that non-full time residency does not establish a lack of detriment. The Byerson contend that because the Plaintiff has not identified the precise payment they will receive as part of the distribution the court cannot properly balance the benefit to the estate and the detriment to the Byersons. The Byersons also advise that since the bankruptcy filing they have lost 154,000 points of their 308,000 points held in their Travel + Leisure Co. account. The Byersons also alleged that as of January 2, 2026 they were no longer able to use their points to make reservations. Doc. No. 52 at ¶11. The Byersons recount that they have repeatedly refused Travel + Leisure Co.'s offer to convert their deed interest into a Club Wyndham Access product. *Id.* at ¶12. The Byersons assert that Travel + Leisure Co. cancelled their confirmed reservation for Club Wyndham Atlanta and they incurred $889.26 for replacement lodging. *Id.* at ¶13.

The Plaintiff asserts that the sale of the Property is "economically neutral" to both itself and the Objecting Defendants because the Complaint merely seeks to authorize the sale of the Property and does not address distribution of the proceeds among the VOI owners. The Plaintiff argues that it has shown, and it is undisputed by the Objecting Defendants, that the sale will greatly benefit the estate because it will bring in $18.2 million into the estate less the costs of sale and related adjustments. The Plaintiff maintains that the Objecting Defendants have shown that their only detriment is loss of the use of a vacation home and such a detriment does not outweigh the benefit to the estate.

The Plaintiff must show that "the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners." 11 U.S.C. § 363(h)(3). The burden shifting analysis under Section 363(h)(3) is a mixed question of law and fact. *In re Louis*, No. 25-cv-0614, 2025 U.S. Dist. LEXIS 119857, at *7 (E.D.N.Y. June 24, 2025). First, the plaintiff must establish that the estate will benefit from the sale. The burden then shifts to the non-debtor joint owner to show a detriment from the sale of the property. If the joint owner meets that burden, then the plaintiff must show that the benefit to the estate is greater than the detriment to the joint owner. *See In re Schulter*, 585 B.R. 670, 678-79 (Bankr. E.D.N.Y. 2018). Payment to creditors by the estate of a significant dividend from the sale of property is a substantial benefit to the estate. *In re Phillips.* 379 B.R. at 796 (citing *In re Gauthreaux,*206 B.R. 502, 506 (Bankr. N.D. Ill. 1997)). Courts have defined "detriment" as economic hardship, as well as any loss, harm, injury or prejudice resulting from the involuntary displacement. *In re Phillips*, 379 B.R. 765, 796 (Bankr. N.D. Ill. 2007) (citing *In re Trout,* 146 B.R. 823, 829 (Bankr. D.N.D. 1992)); *In re Louis*, 2025 U.S. Dist. LEXIS 119857, at *13 (If the inconvenience of relocating were itself a sufficient detriment to the joint owner, then a § 363(h) sale of residential property could almost never occur); *In re Henshaw*, No. 13-00388 DKW-KSC, 2014 U.S. Dist. LEXIS 5488, at *11 (D. Haw. Jan. 13, 2014) (the alleged detriment is not as significant as contended because the Property is not a principal residence and was purchased for investment and estate planning reasons); *In re Satterfield*, 90 B.R. 484, 490-91 (N.D. Ala. 1988) (holding that inconvenience a co-owner would

[3] Ms. James's opposition did not specifically object to the sale of the property. Rather, Ms. James filed an opposition in an attempt to preserve the filing of a late proof of claim. Ruling from the bench, the court overruled Ms. James' opposition because she did not oppose the sale.

experience if house was sold did not constitute undue hardship that outweighed the benefit to estate as the house was the only asset of the estate); *In re Boss*, No. 12-04113, 2013 WL 1389759, at *5 (Bankr. E.D. Mich. Apr. 2, 2013) (sale of jointly owned vacation home gave a greater benefit to the estate than the harm to co-owners because debtor would be able to pay his creditors 75 cents on the dollar).

The court concludes that the benefit to the estate is greater than any detriment that would be suffered by the Objecting Defendants. In its petition, the Debtor indicated that it had between $500,001.00 and $1,000.000.00 in liabilities. Main Case Doc. No. 1 at §16. The sale of the Property will allow the Plaintiff to pay all its creditors in full and substantial distributions to all the VOI owners excluding the Association. The fact that all creditors will be paid in full and the VOI owners will receive a distribution is a very significant benefit to the estate. This benefit is not disputed by the Objecting Defendants. The court acknowledges that the Objecting Defendants will lose access to vacation homes that they have enjoyed for years and intended to enjoy for years more. However, the Objecting Defendants are not being displaced from a primary residence and will be compensated for the loss of their VOIs. The court does not believe an evidentiary hearing is necessary as it not likely the Objecting Defendants will be able to show any detriment beyond inconvenience which is counterbalanced by the economic benefits all the VOI owners, including the Objecting Defendants, will gain. Accordingly, the Objecting Defendants have not met their burden to show that the detriment they will suffer outweighs the benefit to the estate.

**4. Use of the Property**

The fourth condition is satisfied in this case, as the Property, which is not currently occupied and was previously used as timeshare vacation condominiums, is not used for the purpose of production, transmission, or distribution, for sale, of electric energy or natural or synthetic gas for heat, light, or power. 11 U.S.C. § 363(h)(4).

**B. Affirmative Defenses**

In their Answer, the Byersons asserted seven affirmative defenses. The first affirmative defense — "[t]he Complaint Fails to satisfy the mandatory statutory requirements of 11 U.S.C. § 363(h)" (Doc. No. 18 at 5) — fails because as the court determined *supra,* there are not any genuine issues of disputed facts and the Plaintiff has established a *prima facie* case for relief under Section 363(h).

The Byersons' second affirmative defense — "Deeded Real Property Rights Cannot be Extinguished Without Due Process" (Doc. No. 18 at 5) — fails because it does not allege a disputed issue of material fact. A review of the record shows that the Byersons received adequate due process. The court entered two orders governing service in this adversary proceeding, Doc. Nos. 8 and 41, and the Byersons were served in compliance with those orders as evidenced by their filing an Answer. Doc. No. 18. The Byersons have also appeared at several hearings. The court is satisfied that the Byersons have received adequate due process.

The third affirmative defense — "Benefit to Estate Does Not Outweigh Detriment to Defendants" (Doc. No. 18 at 6) — also fails. The court considered this issue *supra* and concluded

that the economic benefits reaped by both the Objecting Defendants and over 8,000 other VOI owners outweighed any inconvenience or disappointment suffered by the Objecting Defendants.

The fourth affirmative defense — "Inadequate Distribution Terms" (Doc. No. 18 at 6) — does not raise a genuine issue of material fact. The Complaint and Amended Complaint and the Consent Judgments merely seek authority to sell the Property free and clear. The specific amount of distribution to each VOI owner has not yet been determined. The Plaintiff has proposed that VOI owners will receive a distribution from the proceeds of such sale less the costs and expenses of such sale. The payment to VOI owners will consist of their respective *pro rata* shares of the remaining sale proceeds and cash reserves, reduced by unpaid fees owed individually to the Association. The issue of the distribution terms is not currently before the court. What is more, when the proposed distribution is finally presented to the court, the Plaintiff has agreed to include in its revised form of Order submitted with this Motion language preserving the Objecting Defendants' rights with regard to distribution as outlined in Point III of the Byersons' submission.

The fifth affirmative defense — "Improper Classification of Defendants' Ownership Interest" (Doc. No. 18 at 6) — does not raise a genuine issue of material fact relevant to a motion to sell free and clear under section 363(h). The treatment of the Byersons' ownership interest as deeded owners is not currently before the court and as set forth above, their rights in distribution are preserved for when that issue is actually presented to the court.

The sixth affirmative defense — "Pre-petition Impairment of Ownership Rights" (Doc. No. 18 at 7) — does not raise a genuine issue of material fact. The Byersons complain of the loss of points and cancellation of reservations by Travel + Leisure Co. and Club Wyndham Owner Services. These two entities are not parties to this litigation and the court does not have jurisdiction over any dispute between the Byersons and Travel + Leisure Co. and Club Wyndham Owner Services. This adversary litigation does not limit or extinguish any claim that the Byersons may have against Travel + Leisure Co. and Club Wyndham Owner Services. The Byersons are free to pursue Travel + Leisure Co. and Club Wyndham Owner Services in an appropriate forum.

The seventh affirmative defense — "No Consent to Conversion or Non-Deeded Substitute" (Doc. No. 18 at 8) — does not raise a genuine issue of material fact. The section 363(h) test does not require co-owner consent and in fact provides a mechanism under the Bankruptcy Code to sell a property free and clear of all liens and interests when co-owners cannot agree to a sale or partition is impracticable.

### C. Servicemembers Civil Relief Act

Under the Servicemembers Civil Relief Act (the "SCRA"), 50 U.S.C. §§ 3901–4043, before entering judgment against a non-appearing defendant in a civil proceeding, the plaintiff must provide the court with an affidavit or declaration under penalty of perjury stating either: (1) whether the non-appearing defendant is in military service and providing the facts supporting that statement, or (2) that the plaintiff is unable to determine the defendant's military-service status. 50 U.S.C. § 3931(a), (b)(1). "The requirement for an affidavit under paragraph (1) may be satisfied by a statement, declaration, verification, or certificate, in writing, subscribed and certified or declared to be true under penalty of perjury." 50 U.S.C. § 3931(b)(4).

The Plaintiff has represented through the Certification of Sheema Holmes-Walker that it is unable to determine any of the Defendants' military service status without undue burden and at a prohibitive cost because it does not possess the Social Security numbers, dates of birth, or other information necessary to verify the military service status of the more than 8000 non-appearing defendants. Doc. No. 48-4 at ¶¶36, 37, and 54. Based upon this representation that ascertaining the military service status of over 8,000 defendants would impose an undue burden at a prohibitive cost, the court concludes that the Plaintiff has complied with 50 U.S.C. § 3931(b)(1)(B). *See, e.g. In re S.C. Beach Partnership LLC*, Adv. Pro. No. 23-80003-eg, Order Granting Default Judgment as to the Defendants Added by Joinder [Docket No. 64] (June 7, 2023) (entering default judgment against approximately 193 persons without a SCRA search after finding the process of obtaining the necessary information and using that information to run a search confirming none of those persons was in the military service "would require enormous, prohibitive amounts of time. The cost, in both time and money, would be heavily burdensome and wholly disproportionate to the effect of the relief sought in the Complaint"). *See also In re Palm Beach Resort and Beach Club Condominium Association, Inc.*¸ Adv. Pro. No. 21-01168-EPK , Order Granting Amended Verified Statement and Motion for Clerk's Default Against Certain Defendants [Docket No. 28] (Oct. 19, 2021) (granting motion for clerk's default without SCRA search where underlying request by attorney in Amended Verified Statement and Motion for Clerk's Default Against Certain Defendants [Docket No. 23] in the Palm Beach Case, that "[the plaintiff] did not have the information and documentations available to provide the personal information necessary to it that would provide the personal information necessary to perform a search on the Servicemember Civil Relief Act website.") *In re Palm Beach Resort and Beach Club Condominium Association, Inc.*¸ Adv. Pro. No. 21-01168-EPK, Order Granting Plaintiff's Motion for Entry of (A) Default Final Judgment; (B) Summary Final Judgment; and (C) Final Judgment Pursuant to Stipulations [Docket No. 76] (granting final judgment relief against all defendants including those that were defaulted without SCRA search).

## CONCLUSION

For all the foregoing reasons the court concludes that entry of an order authorizing sale of Plaintiff's interest and VOI owners' interest in the Property pursuant to 11 U.S.C. § 363(h) is appropriate. The Plaintiff's Motion for Summary Judgment is granted.

The Plaintiff is directed to submit a revised order to chambers to address the issues raised in Point III of the Byersons' Opposition, Doc. No. 52-2 at 3, and conceded by the Plaintiff at oral argument.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: November 23, 2026